## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| SALOMÃO DE FARIAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | _____ |
| THE BOARD OF REGENTS OF | ) | |
| THE UNIVERSITY SYSTEM OF | ) | JURY TRIAL DEMANDED |
| GEORGIA/GEORGIA STATE | ) | |
| UNIVERSITY, | ) | |
| WENDY HENSEL, individually, | ) | |
| NICOLLE PARSONS-POLLARD, | ) | |
| individually, | ) | |
| RICHARD PHILLIPS, individually, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT
## FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

COMES NOW Salomão "Sal" de Farias ("Plaintiff" or "Dr. de Farias") and files

this Complaint for Injunctive Relief and Damages, showing the Court the following:

### INTRODUCTION

1.

This is an action for race and national origin discrimination and retaliation

under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the Equal Protection Clause of the

Fourteenth Amendment to the Constitution of the United States. Plaintiff also asserts

a breach of contract claim under Georgia law.

2.

Dr. de Farias, a professor at Georgia State University ("GSU"), has for years been denied equitable treatment in his compensation.  In 2021, when his compensation was adjusted from $90,000 to $145,000, his supervisors celebrated the news and affirmed they were happy he was being paid what he deserved. One year later, GSU reduced Dr. de Farias's compensation to $95,000, declared his 2021 adjustment a "mistake," and demanded that he pay back his "surplus" salary that he was paid for 10 months in its entirety.  When he complained about disparities in pay and this gross injustice, GSU engaged in unlawful retaliation against him and began subtracting income from his paychecks to force him to repay the "surplus" salary that GSU had voluntarily paid him. By subtracting income from his paychecks, GSU has also now breached its contract with Dr. de Farias by paying him just a quarter of his contract salary of $95,000, while he continues to perform his promises in his contract and labor for GSU.

PARTIES

3.

Plaintiff Salomão "Sal" de Farias is and was at all times herein a citizen and resident of the state of Georgia.  He is a white Latino male, and his national origin is

Brazilian.

4.

Defendant Board of Regents of the University System of Georgia ("BOR") is vested with the government, control, and management of the University System of Georgia and all of its institutions pursuant to O.C.G.A. § 20-3-51.

5.

Defendant BOR may be served by delivering a copy of the summons and Complaint to Sonny Perdue, Chancellor of the University System of the State of Georgia, 270 Washington Street, S.W., Atlanta, Georgia 30334; and by delivering a copy of same to Christopher McGraw, Vice Chancellor of Legal Affairs, at the same address; and by delivering a copy of same to the Office of the State Attorney General.

6.

Georgia State University ("GSU") is a part of the University System of Georgia and, hence, is governed by the BOR.

7.

Defendant Wendy Hensel was at all relevant times herein a citizen of the state of Georgia and was Provost at Georgia State University from 2019 through 2021. Defendant Hensel can be served with summons and Complaint at 870 United Nations

Plaza, Apt 23-24C, New York, New York 10017.

8.

Defendant Nicolle Parsons-Pollard is a citizen of the state of Georgia and became the Provost at Georgia State University in 2023 after serving as Interim Provost in 2022. Defendant Parsons-Pollard can be served with summons and Complaint at 1 Park Place South, Suite 340, Atlanta, Georgia 30303.

9.

Defendant Richard Phillips is a citizen of the state of Georgia and at all relevant times was the Dean of the J. Mack Robinson College of Business at Georgia State University. Defendant Phillips can be served with summons and Complaint at 35 Broad Street, Suite 720, Atlanta, Georgia 30303.

JURISDICTION

10.

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1343, 1367, and 42 U.S.C. §§ 1981 and 1983.

11.

The violations of Plaintiff's rights occurred in the Northern District of Georgia. Venue for this action in the Northern District of Georgia under 28 U.S.C. § 1391(b) is appropriate because a substantial part of the events or omissions, and the unlawful

actions and practices which give rise to Plaintiff's claims occurred in the District.

## ADMINISTRATIVE PROCEEDINGS

### 12.

Dr. de Farias filed a Charge of Discrimination with the United Stated Equal Employment Opportunity Commission ("EEOC") on October 3, 2022, asserting race and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. That Charge is currently pending at the EEOC.

### 13.

Plaintiff intends to file a motion for leave to amend this Complaint upon receipt of a Notice of Right to Sue from the EEOC.

## FACTS

### 14.

Dr. de Farias is a Clinical Associate Professor at the J. Mack Robinson College of Business and the International Institute of Business ("IIB").

### 15.

Dr. de Farias is Latino, originally from Brazil.

### 16.

Dr. de Farias has close to 30 years of teaching experience, numerous

international publications, and was recently selected by GSU's Master of International Business (MIB) Students cohort as the "Best Professor" in July 2022.

17.

Dr. de Farias began working for GSU in 2018.

18.

Prior to his current position, he held the position of part-time instructor for one year and limited term instructor at GSU, for two years, with a salary of $35,000.

19.

Dr. de Farias accepted the limited term instructor position at GSU because he was a recent immigrant, even though he had an over 20-year history of teaching in Brazil at a public university.

20.

In a muted recognition of his excellence, he was offered a Clinical Associate Professor position in April 2021, with a salary of $90,000.

21.

While this salary increase was welcomed, Dr. de Farias's salary still fell well below similarly-situated professors outside his protected classes. Other than the fact that he is white and Latino, there was no distinction for him being paid substantially less than his similarly-situated, non-white, non-Latino colleagues, considering his

expertise, experience and academic degree.

22.

Dr. de Farias is paid less than *all* non-tenured track professors in his department (the IIB), including professors with lower ranking positions than him, such as Clinical Assistant Professor Edward Wang, who makes $105,000 per year. Even lower ranking lecturers, including one without a business background, are paid more than Dr. de Farias.

23.

No objective criteria are being followed with respect to Dr. de Farias's salary.

24.

When the decision was made to pay Dr. de Farias a salary of $90,000 per year, Dean Phillips and then-Provost Hensel were the final decisionmakers who approved that decision.

25.

On August 9, 2021, then-GSU Provost, Wendy Hensel, sent an email to the university community advising of the university's initiative to ensure that all members of the community are to be treated equitably and fairly with respect to faculty compensation. This initiative identified those who were experiencing salary inversion; and subsequently, with the approval of the Board of Regents, inversion

funds were to be distributed to the 252 faculty members determined to be eligible for an adjustment.

26.

Although the email indicated that individuals would receive the average amount of available funds per person up to $3,700, Dr. de Farias did not pay much attention to this email, as it arrived around the same time that he was transitioning from limited term professor to Clinical Professor, with a significant salary increase.

27.

After a call from a colleague regarding the Provost's email, Dr. de Farias checked his compensation report and found that he had received a $55,000 increase, bringing his salary to $145,000.

28.

When he received his first paycheck reflecting the $145,000 salary, Dr. de Farias discussed this increase with several colleagues, including Leigh Ann Liu, IIB Director, and Tamer Cavusgil, the former IIB Director, all who congratulated him and thought, as he did, that the increase was due to him being a part of the group that had been identified by the Provost, and that he was also being compensated to the level of his experience, placing him in line with other colleagues of similar experience.

29.

All these events led Dr. de Farias to believe that GSU wanted its employees to be fairly compensated and recognized that he had not been in the past.

30.

Dr. de Farias worked from August 2021 to May 2022 with the new salary.

31.

At all times relevant to this Complaint, BOR/GSU had actual and/or constructive knowledge of monetary sums of the monthly paychecks that Dr. de Farias received as salary, including his paychecks from August 2021 to May 2022 that reflected a salary of $145,000 per academic year.

32.

On June 28, 2022, Dr. de Farias received an email from Leigh Ann Liu, which also copied Tamer Cavusgil, and Wanda E. Bartlett, requesting an email or memo discussing his salary change. The ensuing discussion indicated that there was no record of why he had received the additional $55,000.

33.

Mr. Cavusgil appeared perplexed by Ms. Liu's inquiry, and remarked, regarding the $55,000 increase, "His ethnic background was a factor, I assume[,]" and "we were happy to see Salomao receive a fair compensation."

34.

Dr. de Farias received no further communication from anyone until July 27, 2022, when he received an email from the payroll manager, Patricia Wallace, indicating that he had been overpaid from August 2021 to May 2022, in the amount of $69,450, that he should remit $56,155.57 in repayment to GSU, and that GSU would be willing to discuss a repayment plan.

35.

His salary was also immediately cut down to $95,000 ($5,000 of which was due to the statewide increase).

36.

When the decision was made to pay Dr. de Farias a salary of $95,000 per year, Dean Phillips and then-Interim Provost Parsons-Pollard were the final decisionmakers who approved that decision.

37.

On August 1, 2022, Dr. de Farias emailed then-Interim Provost Parsons-Pollard to complain about GSU's attempt to claw back nearly $56,000 (net) from the 2021-2022 academic year and that he was not being compensated fairly based on his national origin.

38.

Dr. de Farias's email to then-Interim Provost Parsons-Pollard constituted protected activity.

39.

On information and belief, then-Interim Provost Parsons-Pollard communicated Dr. de Farias' August 1, 2022 complaint to Dean Phillips.

40.

On August 7, 2022, Dean Phillips took the time—on a Sunday—to redline Plaintiff's study abroad proposal in an attempt to humiliate Dr. de Farias based on his national origin and tell Plaintiff that his English was poor. Dean Phillips had not made such comments about Dr. de Farias's English earlier that year when he submitted a separate study abroad proposal.

41.

GSU's actions have humiliated Dr. de Farias. The content of GSU's repayment email implies that he was dishonest with the university, when in fact, Dr. de Farias alerted his department heads to the salary increase immediately and was greeted only with congratulations and celebratory sentiments that he was being paid what he deserved.

42.

Dr. de Farias discussed this matter with his director, Leigh Ann Liu, who told him that if the additional salary he received for an academic year was in fact a mistake, that he "should not have to pay for someone else's mistake."

43.

Director Liu also told Todd Maurer, Associate Dean of Faculty and Research at the J. Mack Robinson College of Business, that Dr. de Farias should not have to "bear the financial burden of someone else's mistake," that Dr. de Farias had bought a new home based on his increased salary and was relying on that income, and that forcing Dr. de Farias to repay the university would have demoralizing psychological consequences to him and to other colleagues in the IIB and the university. Liu emphasized that it was "only fair that he keeps the extra pay and his salary be adjusted to a fair market value for a productive Clinical Associate Professor, which I think should be around $130,000."

44.

Director Liu also stated to Associate Dean Maurer that Dr. de Farias had been underpaid at $35,000 per year for years.

45.

When discussing GSU's efforts to demand repayment for a full year of

additional salary, Director Liu asked Dean Phillips what would happen if Dr. de Farias files a complaint against GSU. In response, Dean Phillips stated, "discrimination is very hard to prove."

46.

GSU proposed that Dr. de Farias repay his "overpaid" salary by paying $5,344.76 or $5,854.00 a month for the next 12 months.

47.

Dr. de Farias is not financially able to pay this sum back to GSU, nor should he be expected to do so, under any circumstances. Along with his own living expenses, he also financially supports his elderly parents in Brazil. When Dr. de Farias explained this to Dean Phillips, Dean Phillips suggested Dr. de Farias apply for a personal loan at his bank.

48.

GSU's repayment demand is unconscionable and discriminatory, and it has caused Dr. de Farias considerable emotional pain and suffering that has manifested with physical symptoms including sleeplessness and vertigo.

49.

Dr. de Farias's attorneys sent several letters to GSU's counsel informing them of GSU's unlawful conduct, but GSU refused to change its position.

50.

On November 10, 2022, Sharreen Boone informed Dr. de Farias that as he had not selected a repayment plan, that the university would force him onto a 12-month repayment plan and begin deducting $4,997.51 from his paychecks beginning with his November 2022 paycheck (lower than the previous sums demanded due to a prior calculation error by GSU).

51.

For his November 2022 paycheck, not only did GSU deduct the $4,997.51 under the repayment plan, but it also deducted an additional $3,211.61 for "Institutional Liability - After." This brought his paystub to exactly $0.00.

52.

When Dr. de Farias complained about the $0.00 paystub, the Board of Regents issued a paycheck for the additional amount that had been deducted, with no explanation.

53.

By paying Dr. de Farias substantially less per paycheck than his contract for $95,000 per year promised, in spite of the fact that Dr. de Farias has continued to perform his promises as a Clinical Assistant Professor under that contract, GSU has broken its promise to pay him $95,000 per year.

## COUNT I
## RACE/NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF
## SECTION 1981
## (Asserted via 42 U.S.C. § 1983 against all Defendants)

54.

Paragraphs 1 through 53 are incorporated by reference into this Count, as if fully restated and realleged herein.

55.

At all times material to this Complaint, Plaintiff was party to an employment agreement under which Plaintiff worked for Defendants and Defendants compensated him for work. Plaintiff performed his obligations under the employment agreement. By consistently paying Dr. de Farias less than his similarly situated comparators, despite being aware of this pay discrepancy for many years, Defendants have unlawfully discriminated against Dr. de Farias on the basis of race and national origin in violation of Section 1981. By forcing Plaintiff to repay the additional salary that he received for the 2021-2022 academic year, Defendants have unlawfully discriminated against Dr. de Farias on the basis of race and national origin in violation of Section 1981.

56.

Defendants' conduct constitutes unlawful discrimination on the basis of race and national origin in violation of 42 U.S.C. §1981. Pursuant to 42 U.S.C. §1983

Plaintiff is entitled to declaratory and injunctive relief against all Defendants and back pay, front pay, compensatory and punitive damages against Defendants Hensel, Parsons-Pollard, and Phillips, in their individual capacities.

57.

As a direct and proximate result of Defendants' violation of 42 U.S.C. §1981 and §1983, Plaintiff has been damaged and is entitled to the relief set forth in the Prayer for Relief below.

## COUNT II
## RETALIATION IN VIOLATION OF 42 U.S.C. § 1981
### (Asserted via 42 U.S.C. § 1983 against all Defendants)

58.

Paragraphs 1 through 53 are incorporated by reference into this Count, as if fully restated and realleged herein.

59.

Plaintiff engaged in protected activity when he filed a Charge of Discrimination against GSU in October 2022.

60.

Instead of remedying the pay discrepancy between Dr. de Farias and his comparators, these Defendants continued to offer Dr. de Farias consistently low pay. In addition, these Defendants forced Dr. de Farias to repay the additional salary that he

received in the 2021-2022 academic year. GSU then went above and beyond that by generating a paystub for $0.

### 61.

Defendants' conduct constitutes unlawful retaliation in violation of 42 U.S.C. §1981. Pursuant to 42 U.S.C. §1983 Plaintiff is entitled to declaratory and injunctive relief against all Defendants and back pay, front pay, compensatory and punitive damages against Defendants Hensel, Parsons-Pollard, and Phillips, in their individual capacities.

### 62.

As a direct and proximate result of Defendants' violation of 42 U.S.C. §1981 and §1983, Plaintiff has been damaged and is entitled to the relief set forth in the Prayer for Relief below.

**COUNT III**
**RACE DISCRIMINATION IN VIOLATION THE EQUAL PROTECTION**
**CLAUSE OF THE UNITED STATES CONSTITUTION**
**(Asserted against all Defendants via 42 U.S.C. § 1983)**

### 63.

Paragraphs 1 through 53 are incorporated by reference into this Count, as if fully restated and realleged herein.

### 64.

The Equal Protection Clause of the Fourteenth Amendment to the United

States Constitution entitles Plaintiff to equal protection under the laws, including equal protection with respect to race.

65.

Defendants consistently subjected and continue to subject Dr. de Farias to unequal pay because of his race and/or national origin in violation of the Equal Protection Clause of the Constitution.

66.

No compelling or other governmental interest supports these Defendants' use of race or national origin as a basis for the pay differential between Dr. de Farias and his comparators.

67.

Defendants Hensel, Parsons-Pollard, and Phillips, individually, violated clearly established law prohibiting paying employees differently based on race or national origin.

68.

Defendants Hensel, Parsons-Pollard, and Phillips undertook their unlawful conduct intentionally, recklessly and maliciously with respect to Plaintiff and his federally protected rights, entitling Plaintiff to recover back pay, front pay, compensatory and punitive damages against them, in their individual capacities.

69.

Defendants' conduct constitutes unlawful discrimination on the basis of race and national origin under color of state law in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

70.

Pursuant to 42 U.S.C. §1983 Plaintiff is entitled to declaratory and injunctive relief against all Defendants and back pay, front pay, compensatory and punitive damages against Defendants Hensel, Parsons-Pollard, and Phillips in their individual capacities.

71.

As a direct and proximate result of Defendants' violation of the Equal Protection Clause and 42 U.S.C. §1983, Plaintiff has been damaged and is entitled to the relief set forth in the Prayer for Relief below.

## COUNT IV
## BREACH OF CONTRACT
### (Asserted against Defendant BOR/GSU)

72.

Paragraphs 1 through 53 are incorporated by reference into this Count, as if fully restated and realleged herein.

73.

At all times material to this complaint, Plaintiff was party to an employment agreement under which Plaintiff worked for Defendant BOR/GSU and Defendant BOR/GSU compensated him for work. Plaintiff performed his obligations under the employment agreement.

74.

Defendant BOR/GSU has withheld Plaintiff's salary under a forced repayment plan that has no basis in fact or law, as BOR/GSU's demand for repayment is barred by the voluntary payment doctrine, O.C.G.A. § 13-1-13. By paying Plaintiff less than his contract promised to pay him starting with his November 2022 paycheck, BOR/GSU has breached its contract with Dr. de Farias to pay him $95,000 per year.

75.

As a direct and proximate result of BOR/GSU's breach, Plaintiff has been damaged and is entitled to the relief set forth in the Prayer for Relief below.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff respectfully prays for the following relief:

A.    That a jury trial be had on all issues so triable;

B.    Back pay and benefits against Defendants Hensel, Parsons-Pollard, and Phillips in their individual capacities;

C.      Front pay and benefits against Defendants Hensel, Parsons-Pollard, and Phillips in their individual capacities;

D.      Compensatory damages against Defendants Hensel, Parsons-Pollard, and Phillips in their individual capacities;

E.      Punitive damages against Defendants Hensel, Parsons-Pollard, and Phillips in their individual capacities;

F.      Declaratory relief against all Defendants;

G.      Injunctive relief against all Defendants to prevent Defendants from engaging in such discriminatory and retaliatory conduct in the future and to properly adjust Plaintiff's compensation;

H.      Costs incurred in bringing this action, including Plaintiff's attorneys' fees;

I.       Interest on all monetary awards; and

J.       Such other and further relief as the Court deems appropriate under the circumstances of this case.

Respectfully submitted this 17th day of February, 2023.

**BUCKLEY BALA WILSON MEW, LLP**

By:     */s/ Edward D. Buckley*
        Edward D. Buckley
        Georgia Bar No. 092750
        edbuckley@bbwmlaw.com

Andrew R. Tate
Georgia Bar No. 518068
atate@bbwmlaw.com

600 Peachtree Street NE
Suite 3900
Atlanta, GA  30308
Telephone: (404) 781-1100
Facsimile:  (404) 781-1101